UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-80015-CIV-MIDDLEBROOKS/MATTHEWMAN

ESTATE OF BRIEUX DASH, by and through
Emma Dash, EMMA DASH, JADA S. DASH,
B.D., J.R., by and through his Natural Guardian,
and N.D., by and through his Natural Guardian,
WARAPORN CHOMCHUEN,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.
_____/

FILED BY ___KJZ___ D.C.

Jun 27, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION TO COMPEL DEFENDANT'S PRODUCTION OF DOCUMENTS [DE 27]**

**THIS CAUSE** is before the Court upon the following: (1) Plaintiffs' Motion to Compel Defendant's Production of Documents ("Motion") [DE 27]; (2) Defendant United States of America's Opposition to Plaintiffs' Motion to Compel Discovery ("Response") [DE 30]; (3) Plaintiffs' Reply [DE 31]; and (4) Plaintiffs' and Defendant's ("the parties") Joint Status Report [DE 44]. The Court held a hearing on the Motion via Zoom video teleconference (VTC), on June 16, 2022.

## I.  BACKGROUND

On January 5, 2022, Plaintiffs filed a one-count Complaint for "Negligence (Wrongful Death)" against Defendant, stemming from the tragic suicide of Brieux Dash while he was

1

admitted to the West Palm Beach VA Medical Center ("WPBVAMC"). [DE 1]. Within the Complaint, Plaintiffs contend that, "[a]s a provider of medical services to Decedent Dash, [Defendant] and its agents and employees at the WPBVAMC[] had a duty to provide Decedent Dash with treatment that complied with the standard of care." *Id.* at 8. Plaintiffs assert that Defendant and its agents and employees at the WPBVAMC breached this duty of care. *Id.*

Specifically, Plaintiffs allege that the following constitute breaches in the standard of care owed to Decedent Dash: (1) the inadequate method by which mental health staff "conducted and documented patient observation rounds"; (2) WPBVAMC's lack of a policy or clear expectations regarding 15-minute safety rounds, which resulted in "[o]ne of the staff assigned to conduct Decedent Dash's 15-minute safety checks [being] assigned to perform other duties during that time"; (3) the failure of staff to perform safety checks on Decedent Dash as required by protocol; (4) the usage of non-functional patient safety cameras; (5) the failure of the Interdisciplinary Safety Inspection Team ("ISIT") and "other responsible staff" to recognize the risk associated with "corridor doors as anchor points"; (6) WPBVAMC's failure to meet the Veterans Health Administration's ("VHA") requirements for staffing an ISIT; (7) WPBVAMC's failure to meet the VHA's requirements for training staff regarding the usage of the Mental Health Environment of Care Checklist; (8) the lack of a single unifying treatment plan for Decedent Dash as required by the VHA; and (9) the failure of Unit 3C staff to contact Plaintiff Emma Dash "in a timely fashion to discuss discharge planning and [to] obtain clinically appropriate collateral information." *Id.* at 8–9. Plaintiffs contend that, "[a]s a direct and proximate result of these breaches . . . Plaintiffs have sustained significant losses[.]" *Id.* at 9. Accordingly, Plaintiffs "are seeking all compensatory

damages allowable under Florida and federal law for the wrongful and premature death of Decedent Dash . . . ." *Id.* at 9.

Defendant responded with its "Answer to Plaintiffs' Complaint and Affirmative Defenses," on March 16, 2022. [DE 16]. Within its Answer, Defendant denies the allegations concerning the breaches in the standard of care, but admits that "[Defendant], through its agents and employees at the [WPBVAMC], had a duty to provide Decedent Dash with treatment that complied with the standard of care." [DE 16 at 4]. Moreover, as its third affirmative defense, Defendant specifically states that it "did not violate any legal duty to Plaintiffs." [DE 16 at 5].

Thereafter, on April 1, 2022, Plaintiffs served their First Request for Production of Documents [DE 27-2] on Defendant. Defendant objected to many of these requests, *see* DE 27-3, resulting in Plaintiffs' filing of the instant Motion. [DE 27]. Defendant subsequently provided Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents [DE 30-1] and filed a Response [DE 30], to which Plaintiffs filed a Reply [DE 31]. With the matter fully briefed, the Court scheduled a hearing for June 16, 2022. [DE 34]. In doing so, the Court required the parties to file a Joint Notice on or before June 13, 2022, "advising whether the discovery disputes have been resolved, and if not, what specific issues remain for determination by the Court and a brief recitation of the position of Plaintiffs and Defendant on each specific issue." [DE 34].

The parties failed to file the requisite Joint Notice. Consequently, on June 14, 2022, the Court entered an additional Order, directing the parties to file the Joint Notice on or before June 15, 2022. [DE 43]. While the parties complied with the Court's June 14, 2022 Order and filed a "Joint Status Report" [DE 44] that same day, the Joint Status Report is cursory and largely

3

unhelpful. Thus, further discussion of the Joint Status Report has been omitted from the instant Order.

## II.     MOTION, RESPONSE, AND REPLY

A. <u>Plaintiffs' Motion [DE 27]</u>

Plaintiffs move to compel Defendant to produce documents responsive to Plaintiffs' First Request for Production of Documents—specifically, documents responsive to Requests for Production #5, #8, #10, and #14. Those requests are as follows:

> **Request for Production 5**.  All complaints, including employee grievances, filed between January 1, 2016 and August 1, 2019 by any employee of the West Palm Beach VA Medical Center alleging the Psychiatric Unit of the Medical Center was improperly staffed.
>
> …
>
> **Request for Production 8**.  A copy of all performance standards in effect as of March 2019 for each employee of Defendant who was present on the Psychiatric Ward of the West Palm Beach VA Medical Center who provided or was expected to provide any service or form of medical care to Brieux A. Dash at any time during March 2019.
>
> …
>
> **Request for Production 10**.  A copy of all 2018 and 2019 performance appraisals (either midyear or final) for each employee of Defendant who was present on the Psychiatric Ward of the West Palm Beach VA Medical Center who provided or was expected to provide any service or form of medical care to Brieux A. Dash at any time during March 2019.
>
> …
>
> **Request for Production 14**.  A copy of all records of training on the prevention of patient suicide for each employee of Defendant who was present on the Psychiatric Ward of the West Palm Beach VA Medical Center who provided or was expected to provide any service or form of medical care to Brieux A. Dash at any time during March 2019.

4

[DE 27-2 at 2–4]. In Plaintiffs' Motion, Plaintiffs note that Defendant "objected to producing documents in response to each of these requests, claiming that the requests were overbroad and that they were protected from disclosure under unspecified 'Florida privacy laws' and the Privacy Act of 1974, 5 U.S.C. § 552a." [DE 27 at 2]. Plaintiffs also note that—with respect to Request for Production ("RFP") #5—"Defendant lodged relevance and undue burden objections in response to Plaintiffs' request for complaints related to improper staffing in WPBVAMC's psychiatric ward." *Id.*

Simply stated, Plaintiffs' overall position is that "the information sought in these requests is relevant to the treatment Brieux A. Dash received while hospitalized under Defendant's care" at the WPBVAMC. *Id.* at 4. As to Defendant's objections based on "Florida privacy laws," Plaintiffs contend that those objections fail "to state with specificity the grounds for objecting to the request." *Id.* at 2 (quoting Fed. R. Civ. P. 34(b)(2)(B)). And, with respect to Defendant's invocation of the federal Privacy Act, Plaintiffs argue that "the statute explicitly provides an exception to the rule prohibiting disclosure of covered records if the disclosure is 'pursuant to the order of a court of competent jurisdiction.'" *Id.* at 3 (quoting 5 U.S.C. § 552a(b)(11)). Indeed, Plaintiffs cite to a number of cases where the Court "considered and rejected privacy-based arguments similar to those raised by Defendant . . . ." *Id.*

As it pertains to Defendant's objections to RFP #5, Plaintiffs assert that the phrase "improperly staffed" is "objectively sufficient to describe the documentation Plaintiffs seek— especially in the context of concerns regarding staffing being made in the form of a complaint or grievance." *Id.* at 4. Plaintiffs additionally contend that "evidence of notice and lack of action by Defendant is relevant to Plaintiffs' claims" and state that their Complaint "raise[s] other claims for

5

which improper staffing would be relevance [sic], including, *inter alia*, lack of 'staff vigilance; failure of staff to properly conduct and log patient observations' and Defendant's [purported] 'fail[ure] to meet VHA requirements for staffing an ISIT.'" *Id.*

B. Defendant's Response [DE 30]

In Defendant's Response, Defendant begins by stating that "Plaintiffs' arguments regarding their request for 'all complaints, including employee grievances, filed…by any employee of the West Palm Beach VA Medical Center alleging the Psychiatric Unit of the Medical Center was improperly staffed' fail to represent the full extent of the parties' ongoing conferrals and the complete nature of Defendant's objections to Plaintiffs' request." [DE 30 at 1]. Defendant then goes through the parties' efforts to resolve the dispute concerning RFP #5. *Id.* at 1–2. In short, Defendant represents that, while its position was that the "all complaints" language from RFP #5 was unduly vague and overbroad without sufficient limitation, Plaintiffs have since "offered a limitation of the term 'all complaints' to be several specific email exchanges at various times that included unnamed 'AFGE Union Leadership.'"[1] *Id.* at 2. With this clarification behind the meaning of "all complaints" in mind, Defendant states that it will "provide a further supplemental response to Plaintiffs once a search for the identified emails is completed." *Id.* at 2.

However, while the parties may have worked through the dispute of the "all complaints" language, Defendant still takes issue with RFP #5 to the extent it requests documents alleging the WPBVAMC Psychiatric Unit was "improperly staffed." *Id.* at 2–3. Defendant argues that "the only staffing deficiency raised in Plaintiffs' Complaint relates to the staffing of the

---

[1] AFGE is "believed to be the American Federation of Government Employees." [DE 30 at 2 n.1].

Interdisciplinary Safety Inspection Team" and that "Plaintiffs never claimed in their Complaint or administrative claims that the staffing of [the] Psychiatric Unit *as a whole* was improper on March 14, 2019 when the decedent died, or any time before or after." *Id.* at 2–3. In other words, Defendant takes issue with the relevancy of RFP #5.

Next, Defendant addresses its Privacy Act objections.[2] *Id.* at 3–5. Defendant's position is that it "properly raised [Privacy Act] objection[s] to each document request that seeks documentation related to federal employee personnel files and other related documents specific to an identified individual, including Requests 8, 10, and 14 that Plaintiffs specifically refer to in their motion." *Id.* at 3. According to Defendant, because Plaintiffs "do not dispute that the documents sought are protected by the Privacy Act," and because the individuals with privacy interests at stake have not given consent for disclosure, "the Privacy Act prohibits disclosure unless release would be required under [the] FOIA." *Id.*

Further, Defendant argues that "[r]equests for court orders under 5 U.S.C. § 552a(b)(11) should be evaluated by balancing the need for disclosure against the potential harm to the subject of the disclosure." *Id.* at 4 (quoting *Hacking v. United States*, No. 19-14449-CIV, 2020 WL 9173087, at *2 (S.D. Fla. July 28, 2020)). In this regard, Defendant argues that "Plaintiffs fail to make a showing that the relevance of the requested information for each individual outweighs their individual privacy concerns as required by a Privacy Act analysis." *Id.* In fact, upon clarification by Plaintiffs during the conferral process, Defendant notes that "Plaintiffs identify 15 individuals whose documents they seek[,]" which includes some personnel who are not medical providers, or

---

[2] While Defendant also objected based on Florida's privacy laws, Defendant advanced no argument concerning such. Thus, the Court considers Defendant's objections based on Florida's specific privacy laws abandoned.

7

supervisory personnel who "may not have been present on Unit 3C between March 11, 2019 and March 14, 2019 or provided direct medical care to the decedent." *Id.* at 5.

   C. Plaintiffs' Reply [DE 31]

According to Plaintiffs, with respect to RFP #5, "Defendant's [Response] now argues that complaints and grievances of improper staffing in the Psychiatric Unit are irrelevant to showing that 'the staffing of [the] Psychiatric Unit as a whole was improper' and that Defendant committed medical malpractice at any time before or after Brieux A. Dash's death, on March 14, 2019." [DE 31 at 2]. Plaintiffs argue that Defendant's position "falls short of . . . Rule 26's broad relevancy provision . . . ." *Id.* Moreover, Plaintiffs state that Defendant "fails to establish why other reports of improper staffing on the day of Brieux A. Dash's death would not relate, in any way, to the treatment Brieux A. Dash received while hospitalized under Defendant's care." *Id.* As reiterated by Plaintiffs, "there are numerous issues arising from Plaintiffs' Complaint that justify producing these documents, including those issues relating to staff vigilance, conduct, and requirements." *Id.* Plaintiffs state that these documents "relate to Defendant's affirmative defense and its denials that it did not breach the applicable standard of care or cause Brieux A. Dash's death." *Id.* at 4.

With respect to Defendant's Privacy Act objections, Plaintiffs argue that Defendant's recitation of the FOIA is inapposite, as it involves different portions of the Privacy Act and an exemption which does not apply here. [DE 31 at 4]. Plaintiffs maintain that Defendant's reading of the Privacy Act would render "all other expressly codified exemptions in the Privacy Act . . . meaningless." *Id.* at 5 (internal quotation marks and alterations omitted). Indeed, Plaintiffs note that Defendant itself cites "case law in its [Response] that acknowledges the existence of an exemption for court ordered production pursuant to 5 U.S.C. § 552a(b)(11)." *Id.* Additionally,

8

Plaintiffs state that it is the *party resisting discovery* that has the heavy burden of showing why discovery should be denied. *Id.* To this end, Plaintiffs state that "Defendant has not shown why the requested documents are irrelevant, nor has Defendant provided a reason for why its employees' privacy interests outweigh the relevance of the requested information." *Id.*

### III.     ANALYSIS

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's *claim or defense* and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). "[T]he party resisting discovery . . . has the burden to demonstrate specifically how the request is unreasonable or not relevant." *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 689 (S.D. Fla. 2011).

Here, beyond general objections as to relevancy and burdensomeness, Defendant also objects to Plaintiffs' Requests for Production based on the federal Privacy Act. "The Privacy Act 'regulates the collection, maintenance, use and dissemination of an individual's personal information by federal agencies.'" *Hacking v. United States*, No. 19-14449-CIV, 2020 WL 9173087, at *2 (S.D. Fla. July 28, 2020) (quoting 5 U.S.C. § 552a). Moreover, the Privacy Act "allows government agencies to release information about individuals only under certain circumstances . . . ." *Id.* (citing 5 U.S.C. § 5552a(b) and *Romeo v. Israel*, No. 13-CV-61411, 2016 WL 3646858, at *4 (S.D. Fla. June 28, 2016)). While 5 U.S.C. § 552a(b)(11) allows the Court to disclose certain records by way of court order, "[r]equests for court orders under § 552a(b)(11) should be evaluated by balancing the need for the disclosure against the potential harm to the subject of the disclosure." *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1447 (11th Cir. 1984).

9

      a. <u>RFP #5</u>

In RFP #5, as stated earlier, Plaintiffs request "[a]ll complaints, including employee grievances, filed between January 1, 2016 and August 1, 2019 by any employee of the West Palm Beach VA Medical Center alleging the Psychiatric Unit of the Medical Center was improperly staffed." [DE 27-2 at 2]. The Court finds the "all complaints" language to be unnecessarily vague and overbroad. However, in Defendant's Response, Defendant notes that the "all complaints" language has since been limited to "several specific email exchanges at various times that included unnamed 'AFGE Union Leadership.'" [DE 30 at 2]. Additionally, Defendant states that it will "provide a further supplemental response to Plaintiffs once a search for the identified emails is completed." *Id.* Consequently, in accordance with these findings and assertions, during the June 16, 2022 Zoom VTC hearing, the Court directed Defendant to produce said supplemental responses to Plaintiffs on or before **June 23, 2022**.

With respect to the parties' dispute surrounding the relevancy of Plaintiffs' requests for documents pertaining to the WPBVAMC Psychiatric Unit being "improperly staffed," the Court finds such request relevant and proportional to the claims and defenses pending in the case. Specifically, in the instant case, Plaintiffs contend that Defendant breached the duty of care owed to Decedent Dash due in part to "the failure of staff to perform safety checks . . . as required by protocol" and due in part to the inadequate method by which mental health staff "conducted and documented patient observation rounds." [DE 1 at 8]. In connection therewith, Plaintiffs assert that "the documentation created by staff logging 15-minute safety checks of Decedent Dash on March 14, 2019, contain false entries." *Id.* Accordingly, the requests for complaints related to the WPBVAMC Psychiatric Unit being "improperly staffed" are relevant to the claims at issue in this

case. While Defendant perhaps reads "improperly staffed" as being purely related to the number of employees, a broader reading of the phrase in line with Rule 26 encompasses Plaintiffs' claims.

    b. <u>RFP #8, #10, and #14</u>

Although Defendant objects on privacy grounds in all four of the Requests for Production at issue, Defendant solely argues for application of the Privacy Act in relation to RFP #8, #10, and #14. Thus, the Court finds that Defendant has abandoned any Privacy Act argument pertaining to RFP #5.[3]

With that being said, as to RFP #8, #10, and #14, after balancing the need for disclosure against the potential harm to the subject of the disclosure, *Perry*, 734 F.2d at 1447, the Court finds that the need for disclosure outweighs any potential harm to the subject of the disclosure and thereover overrules Defendant's Privacy Act objections. In doing so, the Court takes special notice of the Protective Order [DE 21] currently in place, which provides for confidential Privacy Act disclosure. [DE 20-1 at 11]. However, the Court also finds that the RFP #8, #10, and #14 are overbroad in part. Specifically, the Court finds that the "who provided or w[ere] expected to provide any service or form of medical care at any time during March 2019" language contained within RFP #8, #10, and #14 is overbroad and would encompass too many people and too much irrelevant and disproportionate information. The Court therefore limits RFP #8, #10, and #14 to production of performance standards, performance appraisals, and records of training on the prevention of patient suicide, respectively, *for those employees who provided medical care to*

---

[3] But even assuming Defendant had not abandoned its Privacy Act argument pertaining to RFP #5, the Court finds that the same analysis below would apply, necessitating overruling Defendant's objection.

*Decedent Dash during his stay at the WPBVAMC in March of 2019*. This ruling is without prejudice to Plaintiffs' ability to seek additional discovery if they can do so in good faith.

## IV. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion to Compel Defendant's Production of Documents [DE 27] is **GRANTED IN PART AND DENIED IN PART**.

2. With respect to RFP #5, the Motion is **DENIED IN PART AS MOOT** to the extent that Plaintiffs seek to compel the production of "[a]ll complaints . . . alleging the Psychiatric Unit of the Medical Center was improperly staffed." This is because Plaintiffs have since limited their request to several specific email exchanges at various times that included unnamed "AFGE Union Leadership," and Defendant maintained that it would "provide a further supplemental response to Plaintiffs [**on or before June 23, 2022**] once a search for the identified emails is completed." However, as to RFP #5, the Motion is **GRANTED IN PART** to the extent that Plaintiffs request documents responsive to RFP #5's "improperly staffed" language—as limited through conferral—as such request is relevant to the claims at issue.

3. With respect to RFP #8, #10, and #14, the Motion is **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE**. Specifically, the Motion is **GRANTED IN PART** to the extent that Plaintiffs seek to overrule Defendant's Privacy Act objections. However, the Motion is **DENIED IN PART WITHOUT PREJUDICE** to the extent that the Court limits RFP #8, #10, and #14 to production of performance standards, performance appraisals, and records of training on the prevention of patient suicide,

12

respectively, for those employees who provided medical care to Decedent Dash during his stay at the WPBVAMC in March of 2019. This ruling is without prejudice to Plaintiffs' ability to seek additional discovery if they can do so in good faith. Should either party request a more comprehensive Confidentiality Order or a Privacy Act Order, the Court will certainly consider such request.

4. The Court declines to impose sanctions in connection with its June 14, 2022 Order [DE 43]. Similarly, the Court declines to impose cost shifting sanctions upon either party. However, from this point forward, any lack of conferral, overbroad discovery requests or boilerplate or improper objections *will likely* result in an award of costs and expenses under Federal Rule of Civil Procedure 37.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 27th day of June, 2022.

WILLIAM MATTHEWMAN
United States Magistrate Judge